UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CR-80022-CANNON/REINHART

UNITED STATES OF AMERICA

vs.

DANIEL M. CARVER,
THOMAS DOUGHERTY,
JOHN PAUL GOSNEY JR.,
LOUIS CARVER, and
JOSE GOYOS,

              **Defendants**.
_____/

## GOVERNMENT'S OPPOSITION TO DEFENDANT
## DANIEL M. CARVER'S MOTION TO CONTINUE TRIAL

The government, by and through the prosecution team in this matter, respectfully opposes the Defendant Daniel Carver's ("D-CARVER") motion to continue trial [ECF Dkt. 598]. This case was initially indicted in February 2022 and the Court has granted numerous continuances—one over the government's objection. The government is prepared for trial and has made arrangements for witnesses to appear from all over the country, as the scheme perpetrated by D-CARVER and the other remaining defendants was far-reaching. The Court should deny the motion to continue as neither the production of the recordings nor the privilege issues pending before the Court—which the Court is poised to review and rule on shortly—warrants a further continuance of this trial.

## LEGAL STANDARD

The decision to grant a continuance is within the discretion of the district court and should be "decided on a case by case basis in light of the circumstances presented." *United States v. Avalos*, 541 F.2d 1100, 1117 (5th Cir. 1976). "Denial of a continuance is within the broad

discretion of the district court and will not be overturned unless the denial is arbitrary or unreasonable." *Fowler v. Jones*, 899 F.2d 1088, 1093-94 (11th Cir. 1990). When the Eleventh Circuit reviews a denial of a continuance under an abuse of discretion standard it considers several factors, including the "diligence of the party requesting the continuance," judicial economy, fairness to the parties, including their witnesses, and the "extent to which appellant might have suffered harm as a result of the denial." *Id.* at 1094.

## ARGUMENT

**A. The Production of the Telesero Recordings Does not Warrant a Continuance.**

On June 1, 2023, the government interviewed witness W.S., the chief executive officer of Telesero, a vendor that the defendants hired to provide data storage for inbound and outbound calls to and from the defendants' call center, among other services rendered during the conspiracy. The government contacted Telesero after cooperating witness Ethan Macier informed the government during a debrief that the defendants' call center selectively recorded portions of the calls to Medicare beneficiaries. However, as Mr. Macier explained, during the unrecorded portions of these call, the telemarketers aggressively and deceptively pushed the patient to consent to receive a genetic test (or durable medical equipment). The government sought to confirm this information with Telesero, and, initially, reached out to W.S. to learn more about the call center's ability to record calls—specifically, whether the call center employees had the ability to control what portions of the call to record. W.S. confirmed the call center had the capability to stop and start the recording.

During the interview, W.S. also informed the government that, although his company does not typically preserve recordings for a client after the client relationship ends, his company did preserve the recordings for this particular client because his company received a previous production request from an attorney (or attorneys), who he believed were representing the

2

individuals in this case. W.S. was unable to confirm the details of who made the request. He recalled that the request was made within 30 or 60 days of the last recording in the file (August 2, 2021).[1]

After learning of this, the government requested, pursuant to a trial subpoena, that Telesero produce to the government the same recordings it had previously produced to "the attorney." *See* **Exhibit 1** (trial subpoena). On June 5 and 6, 2023, Telesero produced over 500,000 recordings to the government—of which approximately 482,000 fall within the time period of the charged conspiracy (January 2020 through July 2021). On June 7, 2023, undersigned counsel informed the defendants of the recordings, and the government immediately produced the items in Production 22.

Prior to producing these recordings, the government has produced numerous interview reports referencing Telesero and financial records demonstrating that the defendants' entities made payments to Telesero. Additionally, the defendants—especially, D-CARVER, Thomas Dougherty ("DOUGHERTY"), and John Paul Gosney Jr. ("GOSNEY"), who managed the call center and controlled the finances—were well aware that their call center paid Telesero to store the recordings.[2]

These recordings were in the custody, control, and possession of the defendants—just like bank records and tax records stored with a third-party. At any point, the defendants could have requested access to the recordings—or, once this case was indicted, issued a subpoena for the recordings to mine the "exculpatory" evidence. This information was known to them—and

---

[1] The government conducted a search of the call center on July 14, 2021. After the search, the defendants continued to make telemarketing calls and to use Telesero to store the recordings.

[2] Indeed, GOSNEY and D-CARVER received invoices from Telesero. *See e.g.,* **Exhibit 2** (invoice dated July 6, 2021). DOUGHERTY was also well aware his business relied on Telesero's services. *See e.g.,* **Exhibit 3** (email from Galina Rozenberg to DOUGHERTY with expenses).

3

disclosed to them from previous government productions. However, the defendants clearly chose not to pursue the recordings. And it is evident why the defendants, over the past 18 months (or nearly two years since the execution of the search warrant), chose not to investigate further and review these recordings for exculpatory evidence—because these recordings are not exculpatory.

Although the Court has broad discretion in deciding this motion, there is indeed precedent in this circuit for this Court to deny the continuance motion under similar circumstances. In *United States v. Rubinstein*, a defendant appealed a conviction where the government produced email and social media accounts and hard drives nearly a month before trial, arguing, *inter alia*, that the court should have excluded the evidence as untimely. 466 F. App'x 848 (11th Cir. 2012). Affirming the conviction, the Eleventh Circuit held that "the cloned hard drives were created close in time to the trial date and disclosed promptly to Rubinstein. There was no Rule 16 violation by the government because evidence that is not in the government's custody or control is not subject to discovery," *id.* at 852, and that "even if late disclosure of the Yahoo! and MySpace records violated Rule 16, exclusion of the evidence was not warranted. The district court concluded that delayed disclosure was not done in bad faith, **and Rubinstein had nearly a month before trial to inspect the documents**." *Id*. at 853 (emphasis added). In fact, courts have held that exclusion was not the proper remedy even under circumstances where disclosure of Rule 16 evidence was made days before, or even during, trial. *See United States v. Feliciano-Francisco*, 701 F. App'x 808, 811 (11th Cir. 2017) ("When the government learned that the photographs existed and that it did not have them, the government obtained the photographs and soon thereafter gave them to defense counsel, thereby complying with the obligations of Rule 16."); *United States v. Kivett*, 262 F. App'x 967, 972 (11th Cir. 2008) ("Because Exhibit Eight was not 'within the possession, custody, or control' of the government prior to a few days before the trial, the district court did not abuse

4

its discretion by admitting the exhibit and denying relief under Rule 16(d)(2)(C)."); *United States v. Abbott*, No. 13-20760-CR, 2014 WL 11370409, at *2 (S.D. Fla. Mar. 31, 2014) (denying motion for new trial and holding "[d]efendant's substantial rights were in no way violated by the untimely production of [a] search warrant" despite the prosecution providing a copy of it on the afternoon of the first day of trial because defendant was aware that it occurred and any motion to suppress would have been denied).

At trial, the government intends to introduce no more than ten of these recordings—unless the defendants place additional recordings at issue. The recordings are easily searchable based on the date of the call and the phone number used to contact the beneficiary. So, if the defendants have already investigated instances when they believe patients wanted or needed the test, they simply need to run the patient's phone number through a search bar to locate the recording. Additionally, the government is available to assist the defendants in navigating this recent production.

**B. The Government's Routine Production of Additional Materials Generated While Preparing for Trial Does not Warrant a Continuance.**

The government has made additional productions in May and June 2023 and will continue to make weekly productions—if not more frequently—leading up to trial. These productions include trial subpoena returns, additional investigative reports, *Jencks* material, potential *Giglio* material, and cooperation productions.[3] Additionally, the government is diligently reviewing its

---

[3] **Production 18** included a cooperation production from Mr. Macier—which includes emails that have already been produced through search warrant returns and other sources. **Production 19** was a copy of the government's exhibits from the preliminary exhibit list. **Production 20** included cooperation productions, trial subpoena returns, summary slides, Medicare records related to Mr. Gosney's DME company (Trinity Med Supplies, LLC), investigative reports, and items corrupted in previous productions. **Production 21** included trial subpoena returns, interview reports, transcripts from a recorded call, and texts messages (which were previously provided). **Production 22** included the recordings. **Production 23** included a Medicare document, photographs of a private jet, and interview reports (as well as previously produced text messages). **Production 24** included three items: two interview reports of witness W.S. (CEO from Telesero) and the trial subpoena issued to Telesero dated June 2, 2023 (**Exhibit 1**).

5

case file and related case files, and, out of caution, producing items that are likely not subject to any of the government's discovery obligations.  The government has offered—and remains available—to discuss each and every production with the defense.

### C. The Government's Routine Filing for a *Garcia* Hearing Does not Warrant a Continuance

As counsel for Defendant Carver is aware, the government has ethical obligations when it discovers facts that may result in a conflict of interest involving the accused's representation. Upon learning that Defendant Gosney subpoenaed Attorney Sztyndor,[4] the government promptly moved for a *Garcia* hearing.  Similarly, in the process of meeting with cooperator Jestil Tapia earlier this month, the government was informed of a potential conflict of interest relating to Mr. Tapia's attorney and promptly moved for a *Garcia* hearing regarding that representation.  These are routine motions that should not be used or relied upon as a delay tactic.

### D. Litigation over the Advice-of-Counsel Defense and Associated Attorney-Client Privilege Issues Do not Warrant a Continuance

The government has filed two motions that are pending before the Court: (i) a motion to preclude defendants' advice-of-counsel defense, or, in the alternative, to direct defendants to execute proper waivers [ECF No. 589]; and (ii) a motion to authorize filter team to release material subject to the crime-fraud exception [ECF No. 617].  As to ECF No. 589, the Court has ordered accelerated briefing and oral argument is schedule for June 21, 2023.  There remains sufficient time to fully brief, argue, and resolve these issues ahead of trial.

However, the government has sought disclosure of the advice-of-counsel defense dating back to October 14, 2022, for this precise reason—to ensure that it has sufficient time to address

---

[4] On May 25, 2023, Defendant Gosney issued a trial subpoena to Attorney Sztyndor to testify, which indicated he was pursuing an advice-of-counsel defense—this was approximately 10 days prior to disclosing his intent to assert the defense to the Court and the government.  *See* **Exhibit 4**.

the inevitable "ancillary litigation" that will result from the assertion of the defense. The defendants vehemently opposed early disclosure, [ECF Nos. 431, 484], but they now rely on this "ancillary litigation" as a basis for a continuance. Granting a continuance on this basis only encourages defense in this case, and other similar cases, to be vague and evasive on issues related to attorney-client privilege[5] and advice-of-counsel, in effect using the attorney-client privilege as a sword rather than as a shield. *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991).

As to the crime-fraud motion [ECF No. 617], the prosecution team received privilege logs from Filter Attorney Timothy Coley on May 17, 2023—just one day prior to the scheduled motions hearing. After reviewing the logs, the government worked diligently to file the motion requesting release of the communications.

Finally, Defendant Carver, in his motion to continue, suggests there is "ample ground for severance," yet has not moved for severance. He relies on the potential antagonistic defenses between D-CARVER and DOUGHTERY and GOSNEY related to communications with attorneys. [ECF 598 at 12]. However, it is premature for the Court to consider whether severance is necessary, and the issue is not properly before the Court. In any event, there are a number of scenarios that would moot the issue. For example, if the Court grants the government's motion and precludes GOSNEY and DOUGHERTY from advancing an advice-of-counsel defense, then there would be no issue because, even if the defendants took contrary positions on waiver, the communications they disagree about could not be introduced. Similarly, if the Court grants the government's crime-fraud motion, there would be no reason for a continuance, as there would be

---

[5] The defense has not only vehemently fought against having to disclose their intent to assert an advice-of-counsel defense, but they have also made insufficient waivers in connection with that advice-of-counsel defense and have taken contrary positions on attorney-client privilege issues, as outlined in the government's motion to preclude the advice-of-counsel defense. [ECF No. 589]. The defendants bear the burden of proving that there is an attorney-client privilege and/or that they have a "common-interest privilege," but they have sought to put off litigating those issues as close to trial as possible by the positions they have taken. Advancing these positions has the effect of creating late-stage "ancillary litigation" that could have been litigated far earlier.

no valid attorney-client privileges the defendants could waive or not waive. [*See* ECF No. 617 (discussing the basis why the crime-fraud exception applies)].

Finally, even if the advice-of-counsel defense was not precluded and the crime-fraud exception was not found to apply, defendants would still have the burden of establishing that a "common-interest" privilege existed. And if they could not meet that burden then the communications at issue are not privileged and may be released to the prosecution team. *See* Restatement (Third) of the Law Governing Lawyers § 68 (2000) (stating that for privilege to exist the person asserting the privilege must prove that a communication was made "in confidence."). By way of specific example, if D-CARVER exchanged emails with Attorney Aaron Cohen, copying DOUGHERTY, that communication would not be "in confidence" if D-CARVER claims (as he has to the government) that he is the sole privilege-holder with respect to Attorney Cohen.

## **CONCLUSION**

For the reasons set forth above, the Court should deny the motion to continue and proceed with the trial on July 10, 2023.

Dated: June 16, 2023

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

GLENN S. LEON, CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

By: */s/ Patrick J. Queenan*
Patrick J. Queenan
FL Special Bar No. A5502715
Reginald Cuyler Jr.
FL Bar # 0114062
Andrew Tamayo
FL Special Bar No. A5502970
Trial Attorneys

U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Phone: (202) 875-0326
patrick.queenan@usdoj.gov
reginald.cuyler.jr@usdoj.gov
andrew.tamayo@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2023, I served and filed the foregoing document with the Clerk of the Court via CM/ECF.

By:  */s/ Patrick J. Queenan*
Patrick J. Queenan
Trial Attorney
U.S. Department of Justice