UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

UNITED STATES OF AMERICA ）
Plaintiff ）
 ）    Case No. 22-cr-80022
 ）    Hon. Aileen M. Cannon
 ）
v. ）
 ）
DANIEL CARVER ）
Defendant ）
_____/

### DANIEL CARVER'S MOTION FOR A HEARING

*/s/Andrew S. Feldman*
FELDMAN FIRM PLLC
150 S.E. 2nd Avenue, Suite 600
Miami, Florida 33131
Direct: (305) 714-9474
Florida Bar No. 60325
Email: afeldman@feldmanpllc.com

 ***Attorney for Daniel M. Carver***

1

## INTRODUCTION AND BACKGROUND

The prosecution team in this case has viewed attorney-client work product between Mr. Carver's attorneys. The government also produced an unknown amount of Daniel Carver's attorney client privileged and/or attorney client work-product privileged communications to other defense lawyers in this case, including counsel for cooperating witness, Galina Rosenberg, counsel for Mr. Dougherty, and counsel for Mr. Gosney.

Notably, emails with Daniel Carver's lawyers were provided to other defense counsel and email communications between criminal defense lawyers and Mr. Dougherty were also produced. *See* SMU-PPM- 00088678 (emails between Thomas Dougherty and Steve Sadow related to underlying criminal case). Emails with Mr. Carver and his prior health care lawyers were also erroneously produced to counsel for Mr. Gosney.

And then, most significantly, Galina Rosenberg produced (either through waiver, inadvertence, or deliberately) an email to the prosecution team which contains attorney client work product between Mr. Carver's attorneys Keith Fousek and Robyn Sztyndor directly related to the allegations against Mr. Carver in this case. Mrs. Rosenberg is a cooperator who is on the government's witness list, and it is anticipated she will testify against Carver. And then, on June 11, 2023, that privileged email was viewed by the government's prosecution team. Mrs. Rosenberg

had no authority to release that email to the government's prosecution team through waiver or inadvertence or otherwise. Similarly, the government cannot now "unsee" that email. Finally, it is unknown how many similar mistakes were made in the filter process along the way.

For these reasons, Mr. Carver requests that this court schedule a hearing to evaluate whether disqualification, suppression of specific witnesses, or another remedy is appropriate in this case.

## TIMELINE

| **September 19, 2023** |
|---|
| SMU sent a cover letter and the first PPM production to predecessor counsel for Mr. Carver. |

| **November 10, 2022** |
|---|
| Predecessor counsel for Mr. Carver alerted the government that the government had erroneously produced privileged communications with lawyers and individual defendants to other individual defendants. Some of those emails included email communications between criminal defense lawyers representing an individual defendant and the defendant. |

| **November 11, 2022** |
|---|
| SMU sent cease and desist letter. |

| **November 17, 2022** |
|---|
| SMU then sent a sequestration letter and requested that Mr. Carver's counsel sequester certain emails SMU-PPM-0000066347-0000093978. |

| **November 17, 2022** |
|---|
| SMU produced a new bates-range - SMU-PPM-0000068423-SMU-PPM-0000078414 to Mr. Carver |

| **June 11, 2023,** |
|---|
| Prosecution team viewed a communication between Keith Fousek and Robyn Sztyndor. |

| **June 23, 2023** |
|---|
| Government filed Motion to release all privileged communications with Mr. Carver and his lawyers to the prosecution team under the crime fraud exception. |

| **June 25, 2023** |
|---|
| Prosecution team sent an email regarding its viewing of the email to defense counsel. |

## ARGUMENT

This court should determine whether the filter team process which *first* lead to the production of Mr. Carver's privileged emails to other defense lawyers and, *second,* the production of a privileged communication between Mr. Carver's lawyers to the *prosecution* team warrants disqualification, suppression, or some other remedy.

"The attorney-client privilege is one of the oldest recognized privileges for confidential communications." *Abdallah v. Coca-Cola Co.,* No. Civ. A. 1:98-CV 36790RWS, 2000 WL 33249254, at *2 (N.D. Ga. Jan. 25, 2000). The attorney-client privilege is intended to encourage "full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *United States v. Almeida*, 341 F.3d 1318, 1324 (11th Cir. 2003), citing *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). More broadly, the privilege is grounded "in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." *Hunt v. Blackburn,* 128 U.S. 464, 470, 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888). The privilege

is intended to encourage frank communication with an attorney. *See Swidler & Berlin* v. *United States,* 524 U.S. 399, 403 (1998).

In addition, the Fourth Circuit in completely nullifying the implementation of a taint team, *United States v. Seal (In re Search Warrant Issued June 13, 2019*, 942 F.3d 159, 173 (4th Cir. 2019), underscored that "lawyers are obliged to protect the attorney-client privilege to the maximum possible extent on behalf of their clients. *See Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551, 556 (2d Cir. 1967) (recognizing that lawyer has duty to invoke claim of privilege on client's behalf); Model Rules of Prof'l Conduct r. 1.6(a), (c) (Am. Bar Ass'n 1983) (explaining that lawyer owes duty of confidentiality to client and must prevent unauthorized disclosure of confidential information)."

In the instant case, the filter team disseminated privileged communications with Mr. Carver to other defense counsel including counsel for Mrs. Rosenberg, Mr. Rosenberg, Mr. Dougherty, and Mr. Gosney. Mrs. Rosenberg is a cooperating defendant. ***That was the First mistake.***

Mr. Carver had clearly asserted privilege over email communications that were later sequestered by the government including SMU PPM 78624-78626.

The government, however, sequestered that from Mr. Carver and then sent a reproduction to Mr. Carver's counsel which did not include that bates-range thus depriving him of his ability to even assert privilege. See **Ex. A** Sequestration Letter dated November 17, 2022); **Ex. B.,** Reproduction Letter dated November 17, 2022. In the meantime, through the new-and-improved sequestration process that privileged communication (among potentially many others) was sent to cooperating defendant Galina Rosenberg's lawyers. Galina's lawyers then either produced it to the government or are simply not asserting any privileges at all with respect to those emails and the PPM was released to the government. ***That was the Second mistake.***

Then on June 11, 2023, the prosecution team viewed text message correspondence between Mr. Carver's attorneys, Mrs. Sztyndor and Mr. Fousek, related to issues connected to Count One in the Superseding Indictment. Count One alleges, among other things, that as part of the wire fraud and health care fraud conspiracy the defendants and their co-conspirators falsified Medicare enrollment forms to conceal the beneficial ownership of and managing control over Progenix, Cergena, and Theragene.   *See* Dkt. No. 577 at 13 (Superseding Indictment, Count 1). ***That was the Third mistake.***

The government then waited 15 days to alert the defense and did so only after filing a motion to release Mr. Carver's communications with his lawyers, Aaron

Cohen, Keith Fousek and Robyn Sztyndor to the prosecution team under the crime fraud exception. ***That was the Fourth mistake.***

There is no way to unwind this clock. *Arnold v. Cargill Incorporated*, Civil No. 01-2086 (DWF/AJB), at *19 (D. Minn. Sep. 24, 2004) ("An attorney who receives privileged documents has an ethical duty to cease review of the documents, notify the privilege holder, and return the documents"); *See also Harbor Healthcare Sys., L.P. v. United States*, 5 F.4th 593, 599-600 (5th Cir. 2021) (finding irreparable harm where "the government made no attempt to respect [the target's] right to attorney-client privilege in the initial search" and observing that the "whole point of privilege is privacy"); *In re Grand Jury Subpoenas*, 454 F.3d 511, 517 (6th Cir. 2006) ( rejecting the use of a taint team and holding that "the government also has a genuine, if conflicting, interest in preventing investigators from accessing privileged materials. Indeed, the government concedes that the leaking of privileged materials to investigators would raise the spectre of *Kastigar*-like evidentiary hearing"); *Nordstrom v. Ryan*, 856 F.3d 1265, 1271 (9th Cir. 2017) ("The right to counsel is violated when (1) "the government deliberately interferes with the confidential relationship between a criminal defendant and defense counsel," and (2) the interference "substantially prejudices the criminal defendant."); *Bishop v. Rose*, 701 F.2d 1150, 1157 (6th Cir. 1983) (Sixth Amendment violation where government obtained privileged materials).

Furthermore, it seems eminently reasonable to assume that Mrs. Rosenberg

did not assert privilege over any communications with lawyers and therefore

*additional* potentially privileged materials that were sequestered from Mr. Carver

(depriving him of his right to assert privilege) may have been reproduced to Mrs.

Rosenberg and released to the prosecution team and its agents.

Accordingly, it is critical that the court explores these issues now to decide,

what, if any, remedy is appropriate.[1] During the hearing, Mr. Carver respectfully

submits that this Court address the following questions and concerns:

---

[1] *United States v. Walker,* 243 F. App'x 621, 622-24 (2d Cir. 2007) (upholding the
district court's denial of a motion to disqualify, reasoning that there was no
egregious misconduct on the part of prosecutors who had limited exposure to a
handful of privileged documents); *United States v. Melvin,* 650 F.2d 641, 644 (5th
Cir. Unit B 1981) (remanding the case for further findings of fact on the question
of prejudice and, if prejudice was found, for consideration of some remedy short of
dismissal, such as suppression);  *United States v. Stewart, 294* F. Supp. 2d 490,
494 (S.D.N.Y. 2003) (denying partial motion to disqualify the prosecutor for
inadvertent review of a privileged email and holding that suppression is the proper
remedy); *United States v. Morrison*, 449 U.S. 361, 365 (1981) ("Our approach has
thus been to identify and then neutralize the taint by tailoring relief appropriate in
the circumstances to assure the defendant the effective assistance of counsel and a
fair trial."); *see also Nuri v. PRC, Inc.,* 5 F. Supp. 2d 1299, 1303 (M.D. Ala. 1998)
(addressing disqualification and noting that "[a]mong the many competing interests
are maintaining the integrity of the legal community and the legal process,
protecting litigants from prejudice caused by violations of the rules, and respecting
a person's ability to choose her own counsel"); *Arnold v. Cargill Incorporated,*
Civil No. 01-2086 (DWF/AJB), at *10-11 (D. Minn. Sep. 24, 2004) (ordering
disqualification and finding that a party has an "interest in a trial free from even the
risk that confidential information has been unfairly used against it."); *United States
v. Esformes,* No. 16-20549-Cr-Scola/Otazo-Reyes, at *5-6 (S.D. Fla. Nov. 13,
2018) (overruling 100 plus page order disqualifying prosecution team but

- How was this subject email first identified? Did the government use specific search terms to identify the email? If so, which terms?

- Which agents if any have viewed the subject email?

- Why did the government wait 15 days to alert the defense counsel to the viewing of the subject email? And what steps did they take to assure that other privileged materials were not released to the government through the defective filter process?

- When the government sent out privileged communications with Mr. Carver to other defense attorneys and then later asked those attorneys to sequester those materials, what PPM bates-range of materials was later produced to Galina Rosenberg's counsel?

- Has Mr. or Mrs. Rosenberg invoked privilege or provided a privilege log with respect to any of those communications in that bates-range?

- How many of those emails or communications have been shared with the prosecution team and its agents?

## CONCLUSION

For these reasons, Mr. Carver requests a hearing to determine if suppression or disqualification are warranted in this case.

---

providing stern warning to prosecutors); *United States v. Agosto*,675 F.2d 965, 969 (8th Cir. 1982)). (Disqualification also is part of "the Court's duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceedings.")

## CERTIFICATE OF CONFERENCE

I HEREBY CERTIFY that I conferred with counsel for the government via email and the government opposes the requested relief.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served via CM/ECF on all counsel authorized to receive service.

*/s/Andrew S. Feldman*