UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA           CASE NO. 22-CR-80022-AMC
Plaintiff,

v.

DANIEL M. CARVER
Defendant.
_____/

**DEFENDANT DANIEL M. CARVER'S**
**MEMORANDUM IN AID OF SENTENCING**
**AND MOTION FOR DOWNWARD VARIANCE**

The Defendant, DANIEL M. CARVER (hereinafter referred to as "Mr. Carver"), by and through his undersigned attorneys, respectfully submits this memorandum in aid of sentencing and motion for downward variance to assist the Court in fashioning a sentence that is "sufficient, but not greater than necessary," to fulfill the federal sentencing requirements of 18 U.S.C. § 3553 (a). Sentencing is scheduled for February 26, 2024, at 9:00 a.m. before Judge Cannon.

**INTRODUCTION**

Mr. Carver comes before the sentencing Court following a guilty plea on July 14, 2023, to Conspiracy to Commit Health Care Fraud and Wire Fraud in violation of Title 18 U.S.C. §1349 and to Conspiracy to Pay and Receive Healthcare Kickbacks in violation of Title 18 U.S.C. §371. Mr. Carver has been incarcerated since his arrest on March 1, 2022.

Mr. Carver along with others (all but two have already been sentenced by this Court) violated the law as laid out in the Presentence Investigation Report:

1

"It was the purpose of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) paying and receiving kickbacks and bribes in exchange for the referral of Medicare beneficiaries and doctors' orders for durable medical equipment (DME) and genetic testing; (b) paying kickbacks and bribes to telemedicine companies in exchange for ordering and arranging for the ordering of DME and genetic tests for Medicare beneficiaries, without regard to the medical necessity of the prescribed genetic tests for Medicare whether the tests were eligible for Medicare reimbursement; (c) falsifying and causing the falsification of Medicare enrollment forms to conceal the beneficial ownership of, and managing control over, Cergena Laboratories, LLC, ProgenixLab, LLC, and TheraGene Diagnostics, LLC; (d) submitting and causing the submission, via interstate wire communication, of false and fraudulent claims to Medicare for either DME or genetic testing that was not medically necessary and not eligible for Medicare reimbursement; (e) concealing and causing the concealment of the submission of false and fraudulent claims to Medicare; and (f) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud." (Presentence Investigation Report ¶25)

Mr. Carver has reflected extensively on the factors that contributed to his poor decision-making and has sought forgiveness and support from his family and friends. Some of the actions taken by Mr. Carver were driven and amplified by his addiction to narcotics (although not an excuse). During his incarceration Mr. Carver has been able to maintain his addiction under medical supervision by being prescribed Suboxone (a legally prescribed maintenance medication for opioid addicts). Also, it should be noted that Mr. Carver has been extensively cooperating with the Government. However, the cooperation will not be completed at the time of sentencing therefore, the Government likely will be filing a for a sentence reduction (Rule 35, FRCP) and at that time the Department of Justice Trial Attorney, Patrick Queenan, can advise the Court of the value and significance of his cooperation in a substantial assistance context.

2

Mr. Carver's previous counsel filed Objections to the Presentence report on November 14, 2023 outlining Mr. Carver's objection to his criminal history points[1].

## DISCUSSION

### I. SENTENCING STANDARDS AND THE GUIDELINES

The Sentencing Guidelines are no longer mandatory and Courts now have discretion as to what sentence should be imposed. United States v. Booker, 543 U.S. 220, 260-61 (2005). In Booker, the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. Booker, 543 U.S. at 226-27. The Booker Court determined that the constitutional violation would be cured by modifying the federal sentencing statute to make the Guidelines effectively advisory. Id. at 245. Therefore, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. Gall v. United States, 128 S. Ct. 586, 602 (2007); Kimbrough v. United States, 128 S. Ct. 558, 570 (2007) (noting that Guidelines are not mandatory and therefore the Guidelines ranges based solely on policy considerations, including disagreements with the Guidelines); Rita v. United States, 127 S. Ct. 2456, 2465 (2007) (holding that a district court may consider arguments that "the Guidelines sentence itself fails properly to reflect § 3553(a) considerations"); Cunningham v. California, 127 S. Ct. 856, 867 (2007) (stating that judges are no longer tied to the sentencing range stated in the Guidelines but are encouraged to "take account of" that range along with the sentencing goals Congress enumerated in 18 U.S.C.

---

[1] Objections to the Presentence report in Mr. Carver's case were due on or before November 14, 2023. Andrew Feldman (prior counsel) filed objections to the Presentence Report on November 14, 2023. However, on November 21, 2023, the Court granted Mr. Feldman's motion to withdraw as counsel. As new counsel I entered my appearance on November 22, 2023. After reviewing the case and the objections filed by Mr. Feldman, I noticed Mr. Feldman failed to object to the omission of the extra point of acceptance under §3E1.1 (b) for Mr. Carver. We urge the Government to move for the extra point of acceptance under §3E1.1 (b), even though Mr. Carver pled guilty in the middle of trial, he did save the Government and the Court time and resources for other trials. There is a reasonable inference that can be made between Mr. Carver's guilty plea and the soon after plea of Thomas Dougherty and John Paul Gosney.

§ 3553(a) of the Sentencing Reform Act). Consequently, district courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.' Kimbrough, 128 S. Ct. at 570 (quoting Booker, at 245-246); Gall, 128 S. Ct. at 596 (stating "[t]he Guidelines are not the only consideration, the district judge should consider all of the § 3553(a) factors").

As explained by the Kimbrough Court,

> The statute, as modified by *Booker,* contains an overarching provision instructing district courts to "impose a sentence sufficient, but not greater than necessary" to accomplish the goals of sentencing, including "to reflect the seriousness of the offense," "to promote respect for the law," "to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a) (2000 ed. and Supp. V). The statute further provides that, in determining the appropriate sentence, the court should consider a number of factors, including "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the sentencing range established" by the Guidelines, "any pertinent policy statement" issued by the Sentencing Commission pursuant to its statutory authority, and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Ibid.*

The Kimbrough Court goes on to explain, "while the statute still requires a court to give respectful consideration to the Guidelines, see *Gall v. United States, ante,* 552 U.S., at 45-46, 48-49, 128 S.Ct. 586, at 594, 596, 2007 WL 4292116, *Booker* "permits the court to tailor the sentence in light of other statutory concerns as well," 125 S.Ct. 738." These cases "mean that the district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." Kimbrough, 128 S. Ct. at 577 (Scalia, J., concurring).

In the instant case, Mr. Carver participated in a serious, yet, non-violent felony. He acknowledges the severity of his crime, therefore punishment is necessary to create not only deterrence but also to maintain respect for the law. However, to sentence Mr. Carver within the

4

guideline range or to the statutory maximum would be a sentence that is not only greater than necessary but inconsistent with the prior sentences received by similarly situated defendants in this case. We respectfully submit that the court should look at the totality of the circumstances including the sentences of Mr. Carver's co-defendants and as a result give Mr. Carver a variance below the guideline range.

## II. CONSIDERATION OF OTHER RELEVANT STATUTORY FACTORS PURSUANT TO 18 U.S.C. §3553

A sentence that is "sufficient, but not greater than necessary," under 18 U.S.C. §3553(a) is the lowest possible sentence that accounts for all of the relevant statutory factors. Those statutory factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (3) the kinds of sentences available; (4) the Guidelines range; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparity; and (7) the need to provide restitution. See 18 U.S.C. §3553(a).

### A. CARVER'S PERSONAL HISTORY

Daniel Carver was born on September 26, 1986 in Brooklyn, New York. His mother, Josephine Ann Russo, 63, is a retired schoolteacher. His father, Daniel Carver, 66, is the owner of Cosmopolitan Construction of South Florida LLC. Mr. Carver has one brother, Louis, who the Court is familiar with as he is one of the co-defendant's in the case and has been sentenced by this Court.

Mr. Carver's childhood was quite tumultuous. During his formidable years (age 9-13) Mr. Carver's father was incarcerated in a federal facility from 1995-1999. This in turn caused Mr. Carver to grow up faster than most 9 year olds. The family began to have financial struggles. His mother was essentially a single mother trying to get by on a teacher's salary with two young boys at home.  Although Mr. Carver was afforded access to good schools, a family home in a nice neighborhood, and seemingly an intact family, things on the outside are not always as perfect as they seem. Mr. Carver began drinking alcohol and smoking marijuana at 13 years old. While his father had returned home at this point, Mr. Carver struggled with that return  (and resentment toward his father for his absence) and ultimately took the wrong path to deal with his emotions. As a result of his smoking and drinking at such a young age he was inevitably introduced to the wrong crowd of people who were not good influences on his life. By age 17, Mr. Carver was abusing Ecstasy/MDMA, Xanax, and other benzodiazepines. At 23 years old Mr. Carver had a full-blown addiction to oxycodone. That led to heroin and cocaine use (both powder and crack).  Mr. Carver has been in and out of drug treatment programs for most of his adult life in an attempt to overcome his addiction. As of now, Mr. Carver has been prescribed suboxone which has helped tremendously in his treatment for opioid dependence. Mr. Carver has been on suboxone since his incarceration, and it has helped with his progress towards treating his addiction to opioids.

Mr. Carver dropped out of high school in the 12th grade. He has since earned his GED. In 2017, Mr. Carver met his wife, Ivana Mhilli. They were married that same year. Mhilli has a son, Mason, from a prior relationship who Mr. Carver has helped her raise since he was 3 years old. Mason, who is now 9 years old thinks of Mr. Carver as his father since he is the only father figure Mason has ever known. Mhilli and Mr. Carver have two biological sons together, Daniel

Joseph Carver (5) and Anthony Vincent Carver (4). Mr. Carver and Mhilli are now separated and even though Mr. Carver is incarcerated he remains in constant contact with his three children.

While Mr. Carver's upbringing was plagued by substance abuse, bad decisions, and even worse influences, his mother and father have been constant support during this process. Mr. Carver is lucky to have them in his life to rely on and to provide him with a stable home once he is released from incarceration. In view of the foregoing, we request the Court find a punishment not greater than necessary to achieve the purposes of sentencing.

### B. NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Carver understands the severity of his crime and the role he played in the conspiracy. That is evident from his plea agreement where he agreed to not only plead to two counts of the Indictment but also to the four-level role enhancement. Mr. Carver, along with others, was responsible for submitting or causing the submission of false and fraudulent claims to Medicare totaling $67,422,579 of which Medicare paid approximately $53,051,39.

### C. AIMS OF SENTENCING AND LEGALLY AVAILABLE SENTENCES

Section 3553 (a)(2) instructs the Court to craft a sentence that reflects the seriousness of the offense (just punishment) and promotes respect for the law (general and specific deterrence), while at the same time recognizing the value and likelihood of rehabilitation. Mr. Carver understands the severity of his offense.

### D. AVOIDING SENTENCING DISPARITIES

In determining a reasonable sentence, the Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553 (a)(6). A sentence is "substantively unreasonable if

7

it does 'not achieve the purposes of sentencing stated in § 3553(a).'" United States v. Krutsinger, 449 F.3d 827, 830 (8th Cir.2006) (finding that the district court committed no abuse of discretion when it considered sentencing disparity between two defendants who committed the same crime in the same conspiracy). United States v. Martin, 520 F.3d 87 (1st Cir. 2008) ("district courts have discretion, in appropriate cases, to align codefendants' sentences somewhat in order to reflect comparable degrees of culpability--at least in those cases where disparities are conspicuous and threaten to undermine confidence in the criminal justice system."). See also United States v. Neufeld, 223 Fed. Appx. 887 (11th Cir. 2007) (affirming sentence of 48 months where the Guidelines range had been 135 to 168 months based in part on disparity between the guideline sentence and the sentences imposed on Neufeld's codefendants).

As a result, the Court should look at the sentences of co-defendants in this case, especially those similarly situated to Mr. Carver. Therefore, to sentence Mr. Carver at his guideline range would be inconsistent with the sentences the Court had handed down to others of the highest level of culpability in this case. In United States v. Videa, 807 Fed. Appx. 922 (11th Cir. 2020) the Court explained it affirmed the lower Court's sentence in part because they found that it was necessary for the defendant to "be sentenced similarly to his codefendants…to avoid sentencing disparities." Videa, 807 Fed. Appx. 922 at 926.

Mr. Carver should be determined to be similarly situated to co-conspirator Thomas Dougherty. While Mr. Dougherty received some benefit for removing himself from the conspiracy, his removal was only one month before the conspiracy ended and the search warrant was executed. Therefore, Mr. Doughtery obtained the benefit of two levels less than Mr. Carver in loss amount and one point less in role enhancement. It is respectfully submitted that those three levels should not amount to a 132 month difference in sentencing. In all other respects, Mr. Dougherty and Mr.

Carver are similarly situated in this offense. That includes being involved in the same conduct, same conspiracy, similar criminal history records. Both defendants pled guilty and have been cooperating with the Government. However, it is fair to point out that Mr. Carver pled guilty on July 14, 2023, and Mr. Dougherty did so on September 19, 2023. It is a reasonable inference that Mr. Dougherty based, in part, his decision to plead guilty once he knew Mr. Carver was prepared to testify against him at trial.

While §3553(a)(6) allows the Court to view cases nationwide to make disparity calculations, it also permits in cases like Mr. Carver's a comparison of co-defendants' sentences. In this case, Mr. Caver and Mr. Dougherty are similarly situated. In the Eastern District of Virgina, the Court was in the same unique situation with two similarly situated co-defendants with widely different guideline ranges. In United State v. Doan, 498 F. Supp.2d 816 (E.D. Virgina, 2007) the Court explained.

> " Defendant's brother, co-defendant, and co-conspirator clearly represents a similarly situated individual with a 'similar record [ ] who has been found guilty of similar conduct' 18 U.S.C. 3553(a)(6). Both Defendant and his brother were teammates in the same conspiracy, both pled guilty, not forcing the Government to meet its burden at trial; both were convicted of the same criminal conduct, and both have more than insignificant criminal histories. Defendant is a category II offender, and his brother is slightly worse as category III. Nevertheless, despite his brother's more severe criminal history and numerous similarities between the two, Defendant faces potential sentence of 292 to 265 months, while his brother received a sentence of 135 months as authorized by his advisory guidelines." Doan, 498 F. Supp.2d at 821.

Similarly in Mr. Carver's case, his guidelines are exponentially higher than Mr. Dougherty, even though the two are similarly situated. The Doan Court further explained,

> " This Court does not dispute that Defendant deserves a greater punishment than his co-defendant brother based upon his conduct that resulted in two enhancements and no reductions. However, this Court cannot hold that Defendant is so culpable as to require a term of incarceration of 292 months, a sentence more than double of his co-defendant brother…

9

As a result, this analysis clearly demonstrates that 3553(a)(6) weighs extraordinary in favor of a variance in Defendant's sentence." <u>Doan</u>, 498 F. Supp.2d at 821.

In Mr. Carver's case there is even less of a discrepancy between the two parties, as Mr. Carver received a 4 level increase for role while Mr. Dougherty received a 3 level increase. Mr. Carver's loss amount was slightly more based on the fact that Mr. Dougherty removed himself from the conspiracy one month before the eventual end. However, in terms of conduct and role, Mr. Carver and Mr. Dougherty are much more similarly situated than the two brothers from the <u>Doan</u> case. We are asking the Court to also find a variance is warranted under §3553 (a)(6) as to not do so would be contrary to the §3553 factors which ask the Court to design a sentence that promotes respect for the law and the need for punishment while also recognizing that a sentence must be just and not greater than necessary.

## **CONCLUSION**

In light of the § 3553 (a) factors and especially in an effort to be consistent and fair, Mr. Carver urges the Court to grant a variance under § 3553 (a)(6) and to fashion a sentence below the guideline range that is sufficient but not greater than necessary.

Respectfully submitted,

BY____/s/ Daniel Forman_____
Daniel Forman (Fla Bar No.: 0229261)
Ashley Forman (Fla Bar No.: 0112918)
FORMAN LAW GROUP
Attorneys for Defendant Carver
1401 Brickell Avenue, Suite 910
Miami, Florida 33131
Telephone: (305) 577-8888
Fax: (305) 377-0087

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties of record via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                  ___/s/ Daniel Forman_____

                                                  DANIEL FORMAN